WALTER WOOD, APPELLANT, v. CITY OF ˙MILLVILLE, RESPONDENT.

SIR JOHN FRANKLIN, APPELLANT, v. CITY OF MILLVILLE AND MILLVILLE WATER COMPANY, RESPONDENTS.

SIR JOHN FRANKLIN, APPELLANT, v. CITY OF MILLVILLE AND PEOPLES WATER COMPANY, RESPONDENTS.

Argued June 27, 1916—Decided July 6, 1916.

1. That a city is being furnished with a needful supply of water by a private corporation is not alone sufficient to estop it from taking the water plant for public use under its power of eminent domain, even if it be doubtful that the income to be derived will be sufficient to cover the cost of operation, and taxation may be necessary to supply any deficiency, nor is judicial interference justified upon the ground that such action is, under the circumstances, an unreasonable exercise of the power of condemnation.

2. A contract between a water-supply company and a city to supply water to it is property, and may be condemned as an incident to the taking of the property for a public use, and the right of eminent domain may be exercised, if the power has been delegated by the contracting city, for such a proceeding does not impair the contract but appropriates it as property.

On appeal from the Supreme Court.

For the appellants, *Herbert C. Bartlett* and *Joseph H. Gaskill.*

For the respondents, *Louis H. Miller.*

The opinion of the court was delivered by

BERGEN, J. The writs of *certiorari* allowed in each of the above-entitled cases seek the review of certain proceedings taken by the city of Millville to acquire, by purchase or condemnation for the use of the city, the water works, property and franchises of the Millville Water Company of New Jersey

and the Peoples Water Company of Millville, New Jersey, two rival water companies operating in the city. The proceedings are rested on the provisions of an act entitled "An act to enable cities to supply the inhabitants thereof with pure and wholesome water" (*Pamph. L.* 1876, *p.* 336; *Comp. Stat., p.* 823), and the supplements thereto and the amendments thereof. This statute is not operative in any city until assented to by a majority of the voters of such city at an election held for the purpose of obtaining such consent or its rejection, as the majority may decide. This record shows that such an election was held June 11th, 1912, and the statute assented to by a majority of the voters who voted at the election. One of the writs was allowed to review the legality of this election, and the other two to review ordinances providing for the acquisition of the properties of the two water companies and the issue of bonds to meet the cost thereof. The three cases were argued together on one record, which embraces all the proofs taken in each.

As the power to acquire the water plants depends upon the assent of the voters to adoption of the act upon which the ordinances rest, that question will be first considered and determined. It is first urged that the ballot prepared for the election was not in proper form because the instructions to the voter were made a part of the ballot and so blended with the proposition submitted as to mislead and confuse the voter. The ballots were prepared by a public officer to whom that duty was assigned, and if the instructions had no proper place on the ballot, the voter cannot be disfranchised by such a mistake, if it be a mistake, for he must accept and use the ballot provided. In the present case the ballot contained a statement that if the word "for" be marked off or defaced, it would be counted as a vote against adoption, and if the word "against" was erased, it would be counted as a vote in favor of the proposition, in substantially the words of the statute as to the manner of voting to express voter's intention.

Following this there was printed the words "for" and "against" the adoption of the act. We see nothing confusing or misleading in this, and the fact that a voter erased the

word "for" in the instruction rather than in the proper place, simply indicates that the voter did not read with required care his ballot before he prepared it for voting; if he had done so he would not have been misled.

The next point made is that there was no revision or correction of the election list used in the election.

The prosecutor offered no proof on this question, but insists that the burden is on the defendant to show that a public officer did comply with his duty. The performance of that duty was not within the power of the voter, and if it could avail the prosecutor in this proceeding he must show that the irregularity existed and was injurious; the presumption is that the public officer performed his duty in affording the voters an opportunity to express their wishes on the proposition submitted to them. What effect such a neglect, if it existed, would have in a direct contest against the result of the election, it is not necessary to now determine.

The next objection is that while the proposition received a majority of the votes cast, it did not receive a majority of the voters registered. This claim is so clearly against the words of the statute as to raise a doubt whether counsel has read it with reasonable care, for it only requires "a majority of those of the legal voters of such city who shall vote either for or against" the proposition. The Supreme Court adjudged that the proceedings of the city of Millville, declaring that the act of 1876 had been adopted, should be affirmed and that result we approve and affirm.

The respective writs in the other cases assail two ordinances, one providing for the acquisition by purchase or condemnation of the water plant of the Millville Water Company, and the issue of bonds to raise the amount of purchase price, or the award of commissioners if condemnation is had, and the other for a like purpose concerning the Peoples Water Company.

The objections to these ordinances are similar and numerous, but capable of segregation. One is that they are so unreasonable, inequitable and unfair as to amount to an abuse of authority on the part of the city. The principal basis for

this claim is that the city now has a contract with the Millville Water Company sufficient for its needs, while the net revenue from both plants is not sufficient to pay expenses, and that the ordinances propose to meet the deficiency by taxation.

This, if true, does not amount to an abuse of authority nor render the proposed action of the city so unreasonable, inequitable and unfair as to justify a court of law in setting aside these proceedings. Every city which undertakes to acquire an existing water-supply plant, operating within its limits, is supposed to be supplied thereby, and the insufficient revenue may result from causes which the city can remedy.

In the present case it may result from ruinous competition between the two plants the city intends to acquire, and when properly operated at reasonable rates may become profitable, while on the other hand neither company is likely to long exist with an income not sufficient to maintain their operation and the city may find itself without any supply.

But whatever the situation of the property proposed to be taken may be in these particulars, the city is not estopped to acquire the plants, because it is now being supplied by them, or that the present cost of operation exceeds the income, and if it has the power to acquire, it also has power to raise by taxation the necessary cost of operation beyond revenue if such deficiency should exist, of which there is not and cannot be satisfactory proof in advance of operation by the city.

It is also urged that the bond issue provided for by these ordinances is illegal because not limited to a fixed sum.

As the city expected to acquire the properties by agreement, one for $130,000 and the other for $126,000, it was provided by these ordinances that bonds be issued not to exceed in each case the amounts above stated, and the prosecutor concedes that if the ordinances ended at this point the provision for the issue of bonds would be valid, but he claims that what follows renders the amount uncertain, and therefore the ordinances are not valid. We are of opinion that the prosecutor does not properly construe the ordinances. After providing for the issue of bonds as above set out, the ordinances read,

"provided that the issue of additional bonds in any further sum shall be authorized by a supplemental or other ordinance if required for said purposes," that is, in case the agreed price or the award in condemnation proceedings shall exceed the respective amounts so provided for. This proviso prevents the issue of bonds to the amounts fixed by the ordinances if insufficient to provide for the cost of acquisition, unless such additional sum be authorized by ordinance as shall be required to meet the total cost. Additional bonds may never be required, but if they are then they must be provided for by ordinance, but so far as the present ordinances are concerned the amount is fixed, and the objection has no merit.

The last reason worthy of consideration is that the city, having entered into a contract for a supply of water with the Millville Water Company, it cannot abrogate that contract by the exercise of the right of eminent domain and the taking of its property. This contract is largely devoted to an explanation of the manner in which the plant should be installed, the rates to be charged, and that the city advance to the water company $39,000, to be secured by a mortgage conditioned for the performance of the terms of the contract, and provides for an annual rent of $50 for certain hydrants on extended lines, and also that the water company should have the exclusive right in perpetuity to lay and maintain its pipes in the streets of the city. Such a contract does not withdraw the property from the power of the state to exercise its right of eminent domain.

This precise question arose in the case of *Long Island Water-Supply Co.* v. *Brooklyn*, 166 *U. S.* 685; 17 *Sup. Ct. Rep.* 718, where the town of New Lots entered into a contract with the water company by which the latter agreed to construct the plant and supply the town with water, the town agreeing to pay for the use of fire hydrants. The town, with its obligations, was annexed to the city of Brooklyn, and the latter attempted to condemn the plant. One of the objections to the proceedings was that it was an impairment of the contract in violation of the federal constitution. In overruling this objection, Mr. Justice Brewer said, "The true view is

that the condemnation proceedings do not impair the contract, do not break its obligations, but appropriate it, as they do the tangible property of the company, to public uses."

A contract between a water-supply company and a city to supply water to it is property, and may be condemned as an incident to the taking of the property for a public use, and the right of eminent domain may be exercised, if the power has been delegated by the contracting city, for such a proceeding does not impair the contract but appropriates it as property.

The judgments in each of the cases, to which the views above expressed relate, are affirmed, with costs.

*For affirmance*—THE CHANCELLOR, SWAYZE, PARKER, BERGEN, KALISCH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, JJ. 9.

*For reversal*—None.